STATE OF CONNECTICUT *v.* ANONYMOUS (1975–5)*

APPELLATE DIVISION OF THE COURT OF COMMON PLEAS

* Thus entitled, in view of General Statutes § 54-90.

COLLINS, J. The defendant was arrested on a uniform summons and complaint on April 28, 1972, which charged him with violation of § 14-227a of the General Statutes—operating a motor vehicle under the influence of liquor or any drug or both. The defendant pleaded not guilty to the charge and requested a trial by jury. On March 2, 1973, after trial and a verdict of guilty was returned, the defendant duly filed his motion to set aside the verdict. That motion was denied on March 26, 1973, and the defendant appealed to this court.

The defendant has assigned as error various rulings of the trial court on the admission of evidence and testimony, its conduct of the trial, and its denial of defendant's motion to correct the transcript. Dispositive of this appeal is the defendant's assignment of error in respect to the admission of the results of the chemical analysis of his blood for alcohol content.

Simply put, the statutory conditions precedent for admission of the test results, as outlined in § 14-227a of the General Statutes, were not complied with. Since the word "test" in the context of that statute refers to the chemical analysis of a sample of blood and not to a series of samples from different individuals, we conclude that the procedure used in testing the sample, as testified to by

the chief state toxicologist, and as reported by him in state's exhibit C, did not satisfy the requirement of subsection 14-227a (b) (4) that the device used for testing the sample be checked for accuracy by the operator thereof immediately after the test.

In 2 Erwin, Defense of Drunk Driving Cases § 28.06 (3d Ed. 1971), Connecticut's requirement that the testing device be checked for accuracy immediately after the test is discussed as an exception to the general rule that state chemical test legislation does not set forth the exact methods or techniques to be followed. Our statutory requirement is clear and cannot be ignored. The plain words of the statute itself, as well as the reasoning in *State* v. *Blanchard,* 6 Conn. Cir. Ct. 303, show that subsection (b) of § 14-227a refers to statutory conditions precedent to the introduction of such evidence in a criminal prosecution. The Appellate Division of the Circuit Court in *State* v. *Novotasky,* 5 Conn. Cir. Ct. 326, 330, pointed out that "subsection (b) (4) requires that the 'device used for such test was checked for accuracy . . . by the operator thereof *immediately* after the test' (italics supplied). The adverb 'immediately' is significant. The only device within the control of the operator which could immediately be checked for accuracy would be the device which the operator used in analyzing the sample."

The word "immediately," where "used in connection with human conduct, as in the case of a requirement that a certain thing shall be done immediately, . . . is generally held to require that the act shall be performed, not instantly, but without unreasonable delay having regard to the nature of the thing to be done." *O'Brien* v. *Wise & Upson Co.,* 108 Conn. 309, 312; *L. & E. Wertheimer, Inc.* v. *Wehle-Hartford Co.,* 126 Conn. 30, 34. The use of the word in the instant statute precludes the testing of a

series of samples before checking the accuracy of the device since "immediate" means "next in line or relation; directly connected," or having no intermediary or intervention. Words & Phrases, "Immediate."

After state's exhibit C had been admitted into evidence over the objection of the defendant, the prosecution's witness, the chief state toxicologist, testified on direct examination that the machine is not tested for accuracy after each sample but rather that sometimes fifteen or twenty-one successive samples are tested in a day and that at the end of the testing of those unknown samples, the accuracy of the testing machine is checked by using a known sample. The state's argument that that procedure satisfied the requirement of subsection (b) (4) of § 14-227a is without merit since the statute is explicit on the point of immediacy.

The chief state toxicologist testified that the method used in the instant case was "gas chromatography." In 1 Erwin, op. cit. § 17.05 [d], the accuracy of that type of test is discussed. "This method, assuming that it is conducted correctly and carefully, is the most specific of all blood tests for ethyl alcohol. Because of the cost of the apparatus and the necessity of frequent and continuous maintenance and performance checks, the gas liquid chromatographic analysis of blood is not widely used. Assuming correct operation of the equipment and performance of the analyst, the only source of error is in contamination of the blood sample with ethanol prior to the test."

The chief state toxicologist testified on cross-examination that the results of the sample in the present case were known at 8:42 a.m. and that the machine was tested for accuracy "sometime before noontime" but after other samples had been tested.

Since admissibility of the test is dependent upon satisfaction of the statutory conditions precedent, the proponent of the test results in the present case must prove that the requirement that the testing device be checked for accuracy by the operator immediately after the test was satisfied by the procedure employed by the chief state toxicologist. No evidence to that effect was introduced. Until the prosecution had shown through competent evidence that the checking procedures employed were in conformance with the statutory requirements, the conditions precedent to introduction of that test were not satisfied, and the court should have excluded it. Failure to do so was prejudicial error. The ruling on this issue is dispositive of this appeal.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion O'BRIEN, C. J., and MISSAL, J., concurred.